NATIONWIDE MUTUAL INSURANCE COMPANY et al., Appellees,

v.

KIDWELL et al., Appellees;  Yellow Freight Systems, Inc., Appellant.[1]

[Cite as *Nationwide Mut. Ins. Co. v. Kidwell* (1996), 117 Ohio App.3d 633.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 95 CA 1683.

Decided Dec. 31, 1996.

---

1. Nationwide Mutual Insurance Company did not enter an appearance in this appeal.

*James L. Baum*, for appellees Charles E. and Donna K. Kidwell.

*William R. Thomas* and *Ronald A. Fresco*, for appellant.

PETER B. ABELE, Presiding Judge.

This is an appeal from a judgment entered by the Athens County Common Pleas Court in favor of Charles E. Kidwell, defendant below and appellee herein, and against Yellow Freight Systems, Inc., defendant below and appellant herein.

Appellant failed to make assignments of error in its brief as required by App.R. 16(A)(2). In the interest of justice, we will consider the following statements as appellant's assignment of error:

"The trial court's decision granting defendants-appellees Charles E. & Donna K. Kidwell's motion for summary judgment and denying defendant-appellant, Yellow Freight Systems, Inc.'s similar motion on the basis that defendant-appellant, Yellow Freight Systems, Inc., was not entitled to a judgment as a matter of law was improper.

"A.  Defendant-appellant, Yellow Freight Systems, Inc., is requesting reimbursement on their statutory subrogation rights for compensation and benefits paid as a result of a claim for the inclusion of traumatic chondromalacia of the right patella which was pending on the effective date of House Bill 107."

On October 25, 1990, appellee Charles E. Kidwell, during the course and scope of his employment with Yellow Freight Systems, Inc., suffered injury in a motor vehicle accident allegedly caused by Charles E. Rogers, now deceased.

Yellow Freight Systems, Inc. is a self-insuring employer pursuant to Ohio's workers' compensation statutes.  Kidwell filed a workers' compensation claim with Yellow Freight Systems, Inc. after the accident.  Yellow Freight Systems, Inc. allowed Kidwell's claim for "cervical strain, lumbar strain and bruised shoulder and bruised right lower leg."  Kidwell later filed a motion with Yellow Freight Systems, Inc. and the Industrial Commission requesting that his claim be additionally allowed for the condition of "traumatic chondromalacia of the right patella."  On February 9, 1994, an Industrial Commission district hearing officer granted Kidwell's request.  On May 5, 1994, an Industrial Commission staff hearing officer affirmed the district hearing officer's decision.  Pursuant to the May 5, 1994 decision, Yellow Freight Systems, Inc. paid Kidwell temporary total disability benefits totalling $11,133.44 and paid Kidwell's physician Dr. Unverferth $1,879.  Yellow Freight Systems, Inc. has paid a total of $49,503.08 in workers' compensation benefits to Kidwell and his medical providers as a result of the October 25, 1990 accident.

At the time of the accident, the alleged tortfeasor Rogers had a Nationwide Mutual Insurance Company motor vehicle liability insurance policy with a $50,000 per person bodily injury limit.  On October 21, 1992, Kidwell and his wife filed a negligence action against Rogers's estate.  Nationwide Mutual Insurance Company defended the action on behalf of Rogers's estate.  The action led to a proposed $50,000 settlement.

On July 7, 1994, Nationwide and Rogers's estate brought the instant action against Yellow Freight Systems, Inc. and the Kidwells.  The complaint provided as follows:

"7.  Plaintiff Nationwide Mutual Insurance Company and Defendants Kidwell have agreed to settle all claims of Kidwells as a result of the accident for the policy limit of $50,000.00 ('the settlement').

"8.  Pursuant to Ohio Revised Code 4123.93 Defendant Yellow Freight Systems, Inc. may have a right to subrogation for amounts paid to and on behalf of Charles E. Kidwell as a result of the accident.

" * * *

"WHEREFORE, Plaintiffs demand judgment that Defendants be required to interplead and set up any claims they may have to the settlement proceeds, that Plaintiffs be discharged from all liability in excess of the settlement proceeds, and that the court adjudge which Defendants are entitled to the settlement proceeds."

On August 9, 1994, the trial court entered an agreed order whereby Nationwide Mutual Insurance Company, on August 10, 1994, deposited the $50,000 settlement proceeds with the Athens County Clerk of Courts.

On August 9, 1994, Kidwell filed an answer, a counterclaim against Nationwide Mutual Insurance Company, and a cross-claim against Yellow Freight Systems, Inc. On August 26, 1994, Yellow Freight Systems, Inc. filed an answer, a counterclaim against Nationwide Mutual Insurance Company, and a cross-claim against the Kidwells. The counterclaims and cross-claims address the proposed settlement and the subrogation issue raised by the complaint. In its answer, counterclaim and cross-claim, Yellow Freight Systems, Inc. demanded that it be permitted to assert its right of subrogation against the plaintiffs and against the Kidwells for the $49,503.08 worth of lost wages, medical expense, and other payments that Yellow Freight Systems, Inc. made to Charles E. Kidwell.

On October 13, 1994, Kidwell filed a motion for summary judgment against Yellow Freight Systems, Inc. In an attached memorandum, Kidwell argued that R.C. 4123.93, the workers' compensation subrogation statute effective [2] on October 20, 1993 and included in Am.Sub.H.B. No. 107 of the 120th Ohio General Assembly, 145 Ohio Laws, Part II, 2990, cannot be applied retroactively. Kidwell argued that his "substantive rights vested on October 25, 1990," the date of his accident.

On October 26, 1994, Yellow Freight Systems, Inc. filed a motion for summary judgment against the other parties in this action. In an attached memorandum, Yellow Freight Systems, Inc. conceded for purposes of the motion for summary judgment that the $36,490.64 worth of payments that Yellow Freight Systems, Inc. paid prior to October 20, 1993 is not subject to subrogation in this action. Yellow Freight Systems, Inc. argued that only the $13,012.44 total of payments it

---

2. The record transmitted on appeal and the appellate briefs filed in the case *sub judice* exhibit confusion concerning the effective date of the version of R.C. 4123.93 included in Section 1 of Am.Sub.H.B. No. 107 of the 120th Ohio General Assembly.

The effective date of the bill is July 21, 1993. Uncodified Section 21 of the bill states that the statutes listed in Section 1 of the bill, which include R.C. 4123.93, are effective on the ninety-first day after the effective date of the entire bill. 145 Ohio Laws, Part II, 3204. Hence, the effective date of the version of R.C. 4123.93 included in Section 1 of Am.Sub.H.B. No. 107 of the 120th Ohio General Assembly was October 20, 1993.

However, as we will discuss, below, this October 20, 1993 version of R.C. 4123.93 was repealed effective September 29, 1995 by Am.Sub.H.B. No. 278 of the 121st Ohio General Assembly, 146 Ohio Laws, Part II, 3581.

made to Kidwell and his medical provider Dr. Unverferth pursuant to the additionally allowed claim for "traumatic chondromalacia of the right patella" after the October 20, 1993 effective date of the version of R.C. 4123.93 included in Am.Sub.H.B. No. 107 is subject to subrogation. Yellow Freight Systems, Inc. contended that its obligation to pay the benefits did not arise until it received the district hearing officer's February 9, 1994 order allowing the additional claim.

In support of its argument, Yellow Freight Systems, Inc. cited the uncodified Section 7 of Am.Sub.H.B. No. 107. Section 1 of the bill includes the version of R.C. 4123.93 effective on October 20, 1993. Uncodified Section 7 provides as follows:

"SECTION 7. Sections 1 and 2 of this act apply to all claims for benefits or compensation, or both, filed on or after, and to all claims pending on the effective date of, this section, except as follows:

"(A) All claims filed on or after, and all claims on appeal to a Regional Board of Review under Chapters 4121., 4123., 4127., and 4131. of the Revised Code on or after, the effective date of this section, shall be transferred to the Industrial Commission six months after the effective date of this act for a hearing in accordance with the law existing prior to the effective date of this section. An order issued by the Commission under this section is appealable to court as provided in section 4123.512 of the Revised Code as amended by this act.

"(B) Notwithstanding division (A) of this section, by no later than one year after the effective date of this section, all such claims filed on or after that date shall be determined according to the provisions of this act, and in particular, sections 4123.511 and 4123.512 of the Revised Code." 145 Ohio Laws, Part II, 3200–3201.

Yellow Freight Systems, Inc. argued that because Kidwell's additional claim for "traumatic chondromalacia of the right patella" was pending on October 20, 1993, the subrogation statute applies to monies that Yellow Freight Systems, Inc. paid pursuant to that claim. Yellow Freight Systems, Inc. requested the trial court to enter a $13,012.44 judgment in its favor for the amount it paid on Kidwell's additional claim. In its October 26, 1994 memorandum opposing Kidwell's motion for summary judgment, Yellow Freight Systems, Inc. repeated the above arguments.

On November 3, 1994, Kidwell filed a reply memorandum to Yellow Freight System, Inc.'s memorandum in opposition. Kidwell argued, again, that his rights vested on October 25, 1990, the date of the accident.

On November 10, 1994, Kidwell filed a memorandum opposing Yellow Freight Systems, Inc.'s motion for summary judgment. In the memorandum, Kidwell argued that his attorney fees and court costs in pursuing his action against the

tortfeasor exceeded the amount Yellow Freight Systems, Inc. is claiming pursuant to the subrogation statute. Kidwell cited the version of R.C. 4123.92(B) effective October 20, 1993 as follows:

"(B) * * * [A] self-insuring employer, for the amount of compensation and benefits paid to or on behalf of his employee for an injury or occupational disease that is compensable under this chapter or Chapter 4121., 4127., or 4131. of the Revised Code, less the amount of reasonable attorney's fees and court costs actually incurred by the employee in the action, [is] subrogated to all of the rights of that employee against a third-party tortfeasor involving that compensable injury or disease."

In an attached affidavit, Kidwell stated that he paid in excess of $16,000 in attorney fees and court costs in the action against the tortfeasor. Kidwell did not present any evidence of the amount he paid in attorney fees and court costs in this action.

On November 17, 1994, Yellow Freight Systems, Inc. filed a reply to Kidwell's memorandum. In the reply, Yellow Freight Systems, Inc. argued that Kidwell's additional claim for "traumatic chondromalacia of the right patella" did not vest until the February 9, 1994 district hearing officer's order. Yellow Freight Systems, Inc. noted that Kidwell's "traumatic chondromalacia of the right patella" condition did not arise until "well after" the October 25, 1990 accident.

On April 24, 1995, the trial court issued an order as follows:

"The dispositive issue appears to be the manner in which R.C. 4123.93 should be applied herein. The ultimate issue is whether Yellow Freight Systems, Inc., is entitled to subrogation regarding certain amounts to be received by Kidwell from a settlement of Kidwell's personal injury claims against the now-deceased Charles E. Rogers. * * *

"The Court has located two authorities which arguably are dispositive of the central issue. These are *Williams v. Winston,* (1994), 65 Ohio Misc.2d 44 [640 N.E.2d 923], and *Bates v. LTV Steel Co.* (April 6, 1995), Cuyahoga App. No. 67039, unreported [1995 WL 168506]. * * * These cases appear to stand for the principle that there is no entitlement to subrogation where the compensated employee's claims, or rights, against the third-party tortfeasor arose prior to the effective date of R.C. 4123.93, that being January 21, 1994.[3] (See Section 21 of HB 107.)" (Footnote added.)

---

3. As we discussed in footnote 2, above, the effective date of the version of R.C. 4123.93 included in Section 1 of Am.Sub.H.B. 107 of the 120th General Assembly is October 20, 1993.

The trial court gave the parties two weeks within which to file any memoranda they wished concerning the applicability of *Williams* and *Bates*[4] to the case *sub judice.* Yellow Freight Systems, Inc. filed a memorandum arguing that because the right of subrogation in the case *sub judice* did not arise until after the effective date of R.C. 4123.93, *Williams* and *Bates* do not apply to the case *sub judice.* None of the other parties filed a memorandum concerning the applicability of *Williams* and *Bates.*

On May 11, 1995, the trial court issued a decision granting Kidwell's motion for summary judgment and denying Yellow Freight Systems, Inc.'s motion for summary judgment. The trial court wrote as follows:

"Charles Kidwell's accident with Charles E. Rogers occurred on October 25, 1990, and Kidwell's cause of action against Rogers arose at that time. Because R.C. 4123.93, as amended, was not effective until January 1994, Yellow Freight clearly had no interest in Kidwell's claims against Rogers at the time those claims arose.

"The Court is not persuaded by Yellow Freight's arguments. The critical date for purposes of applying R.C. 4123.93(B) is the date the injured employee's cause of action arose against the tortfeasor, not the date that a particular condition was allowed by the Industrial Commission or the date of payment for that condition. The court finds that only retroactive application of amended R.C. 4123.93 would enable Yellow Freight to prevail. However, the Court is convinced by *Bates* and *Williams* that it should not undertake that approach."

On July 11, 1994, the trial court entered judgment in accordance with its May 11, 1994 decision.

On August 9, 1995, Yellow Freight Systems, Inc. filed a timely notice of appeal from the trial court's July 11, 1994 judgment entry.

█ In its sole assignment of error, appellant asserts that the trial court erred by granting Kidwell's motion for summary judgment. In particular, appellant argues that Kidwell's claim for "traumatic chondromalacia of the right patella" was pending on the October 20, 1993 effective date of the version of R.C. 4123.93 included in Am.Sub.H.B. No. 107. Appellant cites uncodified Section 7 of the bill,

---

**4.** The trial court and the parties to this appeal cite *Bates v. LTV Steel Co.* (Apr. 6, 1995), Cuyahoga App. No. 67039, unreported, 1995 WL 168506. The Eighth District Court of Appeals vacated that decision on July 27, 1995, and issued a substitute opinion journalized on August 7, 1995, after granting a rehearing. See *Bates v. Sherwin–Williams Co.* (1995), 105 Ohio App.3d 529, 664 N.E.2d 612.

The April 6, 1995 opinion is no longer available on Lexis. When we compare the copy of the April 6, 1995 *Bates* opinion attached to the trial court's April 24, 1995 decision in the case *sub judice* to the reported *Bates* opinion, we find no substantive difference.

which provides that the October 20, 1993 version of R.C. 4123.93 included in the bill applies to claims pending on the effective date of that section, which is October 20, 1993.[5]   Uncodified Section 7 of the bill provides as follows:

"SECTION 7.   Sections 1 and 2 of this act apply to all claims for benefits or compensation, or both, filed on or after, and to all claims pending on the effective date of, this section * * *."   145 Ohio Laws, Part II, 3200.

Thus, it appears that the October 20, 1993 version of R.C. 4123.93 included in Am.Sub.H.B. No. 107 applies to "all claims pending" on October 20, 1993. Appellant accordingly claims that the October 20, 1993 version of R.C. 4123.93 included in Section 1 of the bill, when applied to workers' compensation claims pending on October 20, 1993, is applied prospectively.

In support of this argument, appellant cites *Bates v. LTV Steel Co.* (Apr. 6, 1995), Cuyahoga App. No. 67039, unreported, 1995 WL 168506.[6]   In *Bates*, the employer moved to intervene in the tort action that the injured worker filed against the tortfeasor.   The *Bates* court held that the term "claim" as used in uncodified Section 7 of Am.Sub.H.B. No. 107 refers to matters filed in the Bureau of Workers' Compensation.   The term "claim" does not refer to a lawsuit brought against the tortfeasor.   In the August 7, 1995 *Bates* decision, the court wrote in part as follows:

"A thorough reading of HB 107 supports a limited application of the word 'claim' restricted to those matters pending with the Bureau of Workers' Compensation.   We note that the General Assembly did not include actions, causes or action, or pending litigation in Section 7, though it could have done so.   If these had been included in the statute, then R.C. 4123.93 would have been made expressly retroactive to not only claims before the Bureau of Workers' Compensation, but also to causes of action and/or pending court litigation.

"We conclude that the term 'claim' as used in Section 7 of H.B. 107 refers to matters filed in the Bureau of Workers' Compensation, but does not include actions, causes of action or litigation pending elsewhere."   105 Ohio App.3d at 533, 664 N.E.2d at 615.

In *Stephenson v. Moore's Lumber* (Dec. 14, 1995), Licking App. No. 95 CA 60, unreported, 1995 WL 768515, the court quoted and followed *Bates* and uncodified

---

**5.**   We note that the effective date of Am.Sub.H.B. No. 107 of the 120th Ohio General Assembly is July 21, 1993.   Uncodified Section 21 of the bill states that Section 7 of the bill is effective on the ninety-first day after the effective date of the entire bill.   Thus, the effective date of Section 7 is October 20, 1993.

**6.**   As we discussed in footnote 4, the *Bates* decision has been vacated and replaced with a substantively similar decision, *Bates v. Sherwin–Williams Co.* (1995), 105 Ohio App.3d 529, 664 N.E.2d 612.

Section 7 of Am.Sub.H.B. No. 107. In *Stephenson*, as in *Bates*, the employer filed a motion to intervene in the tort action filed by the injured employer against the tortfeasor. The *Stephenson* court, like the *Bates* court, held that the October 20, 1993 version of R.C. 4123.93 included in Am.Sub.H.B. No. 107 may be applied to workers' compensation claims pending on October 20, 1993, but may not be applied to tort lawsuits pending on that date.

The trial court in the case *sub judice* relied upon *Bates* and *Williams v. Winston* (C.P.1994), 65 Ohio Misc.2d 44, 640 N.E.2d 923. The trial court wrote as follows:

"[*Bates* and *Williams*] appear to stand for the principle that there is no entitlement to subrogation where the compensated employee's claims, or rights, against the third-party tortfeasor arose prior to the effective date of R.C. 4123.93 * * *."

The trial court held that Kidwell's cause of action against the tortfeasor arose on the October 25, 1990 date of the accident, and thus the October 20, 1993 version of R.C. 4123.93 included in Am.Sub.H.B. No. 107 cannot be applied to the case *sub judice*.

We disagree with the trial court's interpretation of *Bates* and *Williams*. As we discussed above, *Bates* stated that the October 20, 1993 version of R.C. 4123.93 included in Am.Sub.H.B. No. 107 applies to workers' compensation claims pending on that date. The *Williams* court did not mention whether a workers' compensation claim pending on the effective date of the statute is covered by the statute, and did not mention uncodified Section 7 of the bill, in which the Ohio General Assembly stated that the October 20, 1993 version R.C. 4123.93 applies to "all claims for benefits or compensation * * * pending" on October 20, 1993. The *Williams* court merely held that the October 20, 1993 version of R.C. 4123.93 included in Am.Sub.H.B. No. 107 cannot be retroactively applied to a tort action filed in 1990. Thus, *Williams* is inapplicable to the case *sub judice*.

In the case *sub judice*, Kidwell's worker's compensation claim for "traumatic chondromalacia of the right patella" was pending on October 20, 1993. Thus, it appears that in accordance with *Bates* and *Stephenson*, the trial court should have found that the October 20, 1993 version of R.C. 4123.93 included in Am.Sub.H.B. No. 107 grants appellant a right of subrogation for that claim. Accordingly, it appears that the trial court should have granted appellant's motion for summary judgment and denied Kidwell's motion for summary judgment.

However, on September 29, 1995, a new version of R.C. 4123.93 and a new R.C. 4123.931 became effective. The version of R.C. 4123.93 in Am.Sub.H.B. No. 278 of the 121st Ohio General Assembly provides definitions for the new subrogation

statute, R.C. 4123.931. Uncodified Section 12 of Am.Sub.H.B. No. 278 discusses the applicability of the new subrogation statute as follows:

"Section 4123.931 of the Revised Code, as enacted by this act, governs the subrogation rights in any action or claim brought pursuant to a cause of action that arises on or after the effective date of this section." 146 Ohio Laws, Part II, 3603.

The new subrogation statute, R.C. 4123.931, effective on September 29, 1995, thus applies to injuries that occur on or after that date. The Ohio General Assembly apparently decided that the new subrogation statute, R.C. 4123.931, should not apply to workers' compensation claims pending on September 29, 1995.

More important, uncodified Section 12 of Am.Sub.H.B. No. 278 also reaches back to 1993 and discusses the applicability of the prior subrogation statute, the October 20, 1993 version of R.C. 4123.93 included in Am.Sub.H.B. No. 107, as follows:

"Section 4123.93 of the Revised Code, as that section existed prior to the effective date of this section, governs the subrogation rights in any action or claim brought pursuant to a cause of action that arose on or after the effective date of Section 1 of Am.Sub.H.B. 107 of the 120th General Assembly and before the effective date of this section."

Thus, the Ohio General Assembly has now spoken on the issue raised in *Bates, Williams,* and the case *sub judice* concerning the applicability of the October 20, 1993 version of R.C. 4123.93 included in Am.Sub.H.B. No. 107 to workers' compensation claims pending on that date. According to uncodified Section 12 of Am.Sub.H.B. No. 278, the October 20, 1993 version of R.C. 4123.93 included in Am.Sub.H.B. No. 107 applies to "any action or claim brought pursuant to a cause of action that arose on or after" October 20, 1993. Thus, we find that because Kidwell's accident occurred before October 20, 1993, appellant has no subrogation rights to Kidwell's additional claim of "traumatic chondromalacia of the right patella."

The Ohio Supreme Court has recognized that the Ohio General Assembly has the authority to clarify its prior acts. See *Martin v. Martin* (1993), 66 Ohio St.3d 110, 609 N.E.2d 537, at footnote 2; *Ohio Hosp. Assn. v. Ohio Dept. of Human Serv.* (1991), 62 Ohio St.3d 97, 579 N.E.2d 695, at footnote 4; *State v. Johnson* (1986), 23 Ohio St.3d 127, 131, 23 OBR 283, 286–287, 491 N.E.2d 1138, 1142; *Hearing v. Wylie* (1962), 173 Ohio St. 221, 224, 19 O.O.2d 42, 43–44, 180 N.E.2d 921, 923. When the Ohio General Assembly clarifies a prior Act, there is no question of retroactivity. If, however, the clarification substantially alters substantive rights, any attempt to make the clarification apply retroactively

violates Section 28, Article II, Ohio Constitution. In *Hearing*, the court wrote as follows:

"Appellee has argued that the change made by the General Assembly in Section 4123.01, Revised Code, was not an amendment but was merely a clarification of what the General Assembly had always considered the law to be. There is, therefore, according to appellee, no question of retroactiveness so far as the application of the amendment to this action is concerned.

"With this contention we cannot agree. The General Assembly was aware of the decisions of this court interpreting the word, 'injury.' Those interpretations defined substantive rights given to the injured workmen to be compensated for their injuries. Those substantive rights were substantially altered by the General Assembly when it amended the definition of 'injury.' *To attempt to make that substantive change applicable to actions pending at the time of the change is clearly an attempt to make the amendment apply retroactively* and is thus violative of Section 28, Article II, Constitution of Ohio." (Emphasis added.) *Id.*, 173 Ohio St. at 224, 19 O.O.2d at 43–44, 180 N.E.2d at 923.

█ In the case *sub judice*, we find that the portion of uncodified Section 12 of Am.Sub.H.B. No. 278 effective September 29, 1995 that "clarified" any questions concerning the applicability the October 20, 1993 version of R.C. 4123.93 did not change appellant's substantive right to subrogation. There was no statutory right to subrogation prior to the adoption of Am.Sub.H.B. No. 107 on October 20, 1993. Am.Sub.H.B. No. 107 created the right. Uncodified Section 12 of Am.Sub. H.B. No. 278 did not create the right, but merely changed the applicability of the version of R.C. 4123.93 included in Am.Sub.H.B. No. 107 by expressly stating that the statute applies to "subrogation rights in any action or claim brought pursuant to a cause of action that arose on or after" October 20, 1993. Thus, we find uncodified Section 12 of Am.Sub.H.B. No. 278 as it relates to the applicability of the version of R.C. 4123.93 included in Am.Sub.H.B. No. 107 to be constitutional. We hold that uncodified Section 12 of Am.Sub.H.B. No. 278 governs the applicability of the October 20, 1993 version of R.C. 4123.93 included in Am.Sub.H.B. No. 107. The October 20, 1993 statute is thus applicable only to "any action or claim brought pursuant to a cause of action that arose on or after" October 20, 1993.

Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error.

█ On October 6, 1995, Kidwell filed a motion for attorney fees and damages he incurred in defending this appeal. On November 21, 1995, we issued an entry stating that we would consider the motion when we rule upon the merits of this case. We will now consider the motion. In a memorandum in support of the motion, Kidwell argues that appellant "has absolutely no good faith basis for

asserting a claim in this matter or bringing this appeal." Kidwell cites App.R. 23 as authority for an award of attorney fees, costs, and other expenses incurred in defending a frivolous appeal. Kidwell cites R.C. 2505.35 as authority for an award of attorney fees and damages in cases in which there were no reasonable grounds for the appeal. On October 11, 1995, appellant filed a memorandum against Kidwell's motion for attorney fees and court costs. We agree with appellant that there were reasonable grounds for this appeal, and we deny Kidwell's motion for attorney fees and damages.

*Judgment affirmed.*

STEPHENSON and HARSHA, JJ., concur.